UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROBERT MARGOLIES,

                Plaintiff,                            **COMPLAINT**

      -against-

                                                    Case No.:

JEN RUDOLPH a/k/a JENNIFER RUDOLPH
and THE ACTOR'S GREEN ROOM LLC,                **JURY TRIAL DEMANDED**

                Defendants.
------------------------------------------------------------------------X

Plaintiff, by his attorneys, SCOTT WAGNER AND ASSOCIATES, P.A., upon information and belief, as and for his Complaint, respectfully alleges as follows:

## **THE NATURE OF THE ACTION**

1. This action is brought by Plaintiff to recover, inter alia, damages caused by the Defendants' libelous communication of knowingly false statements in a publicly accessible, shared post on their Facebook page, to the parties' professional colleagues in the media industry.

2. The wholly unsubstantiated allegations published on said page, particularly with regard to allegations about Plaintiff, contained numerous false statements alleging sexual misconduct on the part of the Plaintiff.

3. The Defendants published defamatory allegations without corroborating evidence or a means of assessing the credibility of the claimants. The post contained false information and unsubstantiated allegations, including untrue statements alleging Plaintiff engaged in sexual misconduct, namely sexual harassment and assault.

4. The inflammatory false statements published in the post were abusive, intentionally misleading as well as damning to the Plaintiff's reputation and good name.

5. The post was shared on a Facebook page with over 13,000 members of the parties' shared profession, the media industry to intentionally harm Plaintiff's reputation and further cause harm to Plaintiff's career.

6. Plaintiff is a private citizen who is neither a politician nor a celebrity.

7. The Defendants' actions were malicious in nature, taken solely to damage Plaintiff's reputation and career.

## JURISDICTION AND VENUE

8. This Court has diversity and supplemental jurisdiction pursuant to 28 U.S.C. §1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

9. This Court has personal jurisdiction over Defendants on the grounds that Defendant JEN RUDOLPH resides within the Eastern District of New York.

10. Venue for this action properly lies in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Defendant JEN RUDOLPH resides in this judicial district.

## PARTIES

11. Plaintiff ROBERT MARGOLIES (hereinafter referred to as "Plaintiff") is a resident of the State of California.

12. Upon information and belief, Defendant JEN RUDOLPH (hereinafter referred to as "RUDOLPH") is a resident of Kings County, New York.

13. Upon information and belief, Defendant THE ACTOR'S GREEN ROOM LLC (hereinafter referred to as "AGR") is a domestic corporation organized under and exiting

by virtue of the laws of the State of New York. (A copy of a printout from the New York Department of State website is attached herewith as **Exhibit A**

## FACTS RELEVANT TO ALL CAUSES OF ACTION

14. Plaintiff is a film producer, director and acting coach living in Los Angeles, California.

15. Defendant RUDOLPH is a casting director and acting coach who resides in New York, New York. She is the Founder and CEO of AGR which is a company that connects various people in the entertainment industry and provides various services.

16. AGR maintains a Facebook page called "The Green Lounge" (hereinafter referred to as "GL") which currently has over 14,000 members.

17. According to its Facebook page, "AGR and The Green Lounge Facebook group is a place where actors from all over the world can come to realize their dreams in community. We provide education, connection, and individual/industry support for all of our members. The group is dedicated to helping all its members reach optimal and equitable outcomes in their careers." (A printout of the Facebook page is attached herewith as **Exhibit B**).

18. The Green Lounge Facebook page and community provide for a set of Group Rules, established by the Administrator (Defendant RUDOLPH) governing conduct and interactions amongst its community members. To join and participate in the Group, members agree that "[b]y being a member of The Green Lounge, [they] agree to honor the below rules. **Failure to comply may result in expulsion**." (Emphasis added). The Rules include a "Zero Tolerance Policy," which indicates, "We have a ZERO TOLERANCE POLICY for sexual misconduct, harassment of any kind, defamation and insults surrounding race, religion, sexual orientation, gender or identity. Any violations must be flagged and reported and can result in expulsion." (See **Exhibit B**).

19. The rules also state "To maintain a safe, supportive, and inclusive environment solicitations of outside services/promotions, racial slurs, micro-aggressions, inappropriate sexual content, harassment of any kind, demeaning or defaming any member of this group is prohibited and will result in expulsion from the group." (See **Exhibit B**).

20. There is a section titled "Respectful and Professional conduct" which states, "We encourage all types of conversations and foster an open, receptive atmosphere. With that, name calling, vitriol, mocking, and shitposting is strictly prohibited." (See **Exhibit B**).

21. On or about January 15, 2018, Plaintiff joined the GL Group community, participating in social and professional interactions and forming and maintaining connections with clients and potential clients. Indeed, Plaintiff had previously been referred many clients by and through the Facebook GL group page for AGR and also by word of mouth through GL group members. These clients include but are not limited to Lydia Fiore and Natalie Roy, who is herself affiliated with AGR and GL.

22. As of June 2, 2020, Plaintiff was currently involved with active business deals and had entered into contracts with several members of the GL Group community to provide services to them and/or their business partners or entities affiliated with them.

23. The above referenced clients produced revenues in the amount of a minimum of $100,000 per year with residual business profits that were expected.

24. Over the past 2+ years, Plaintiff received on average ten (10) clients per month from AGR and through his participation as a member of the GL Group Facebook page community. Plaintiff also gained additional business and professional referrals therefrom in an amount subject to proof at trial.

25. Defendant RUDOLPH was aware that Plaintiff formed connections and received client referrals via his membership and participation in the GL community Group and its Facebook page. Specifically, Defendant has known that Plaintiff has formed and maintained professional relationships with at least 100+ other GL community members, including but not limited to Lydia Fiore and Natalie Roy, and that each of them were already clients or were exploring becoming clients of Plaintiff.

26. As of early June 2020, Plaintiff had enjoyed a stellar professional reputation, both in the GL community group and in the entertainment business community generally.

27. On or about June 3, 2020, Defendant RUDOLPH published a statement on the GL page to its more than 13,000 members (at that time) of the GL community Group, falsely indicating that Plaintiff had violated the Group rules by engaging in sexual misconduct and later communicating that Plaintiff had thus been removed from the Group as a result.

28. Among other statements published to the GL community Group and its 13,000+ members, by Defendant RUDOLPH concerning Plaintiff, she posted: "Over the past week, several women have bravely come forward, putting themselves on the line, to report that members of this community – [NAME REDACTED] and Rob Margolies – crossed the line and caused them harm. I believe these women. I will always believe women and anyone who speaks up about sexual harassment, assault, and other abuses of power. These men have both been permanently removed from this group and will no longer be permitted to participate in any AGR activities, classes, events, or meetups. I realize that this action, and this statement has come far too late. For that and so much more I am deeply sorry." (A printout of said post is attached herewith as **Exhibit C**).

29. Defendant RUDOLPH banned Plaintiff from the Facebook GL Group, which was a source

of business for Plaintiff and indicated to the entire GL Group community that, "[t]he second person I am aware of now has been removed," indicating that Plaintiff was also a perpetrator and/or predator who had engaged in inappropriate, sexual misconduct in the course of professional interactions with actresses and based on such behavior should no longer have access to participate in the Group, thus ostracizing Plaintiff from his professional contacts and colleagues. (A printout of said post is attached herewith as **Exhibit D**).

30. Upon information and belief, Defendant RUDOLPH took this step to ban Plaintiff without conducting any investigation to determine if he had *actually* done *anything* that could be in violation of the 'zero tolerance policy' and without providing Plaintiff with any opportunity to address any purported allegations. By doing so, Defendant RUDOLPH conveyed and communicated to the entire GL Group community that a determination had been made finding Plaintiff to have committed misconduct in violation of the zero tolerance policy, despite the fact that no finding had been made. Rather, Defendant RUDOLPH merely concluded that she "will always believe women and anyone who speaks up about sexual harassment, assault, and other abuses of power," thus concluding and pronouncing to the entire GL community of Plaintiff's peers and business associates that Plaintiff had engaged in sexual harassment, assault, and/or other abuses of power. (See **Exhibit C**)

31. Defendants' conduct, by making and disclosing statements indicating that he was a predator and/or had engaged in sexually harassing behavior in the course of a professional interaction, and by endorsing and adopting those accusations as her own by removing Plaintiff from the GL Group community, was a substantial factor in causing Plaintiff's harm.

32. Since the Defendants made the defamatory and false post about the Plaintiff, he has received no referrals via the GL Group and has lost business opportunities and existing projects. All of Plaintiff's financial and business interests have been directly damaged, because of Defendants' false allegations against the Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Defamation of Character by Libel)

33. Plaintiff repeats and realleges the foregoing paragraphs as if fully stated herein.
34. Defendants knowingly published the aforementioned false statements about Plaintiff by maliciously publishing the written defamatory post which contained false, unsubstantiated allegations alleging Plaintiff engaged in sexual misconduct, namely sexual harassment and assault to a member of the parties' industry.
35. Defendants published this defamatory information without privilege or authorization.
36. Defendants published the false statements about Plaintiff, described here, with malice as they knew the statements were false as pertaining to Plaintiff.
37. Defendants also published the statements with a reckless disregard for the truth of the unsubstantiated allegations.
38. Defendant made these offensive, false disclosures without any investigation or neutral determination as to whether Plaintiff had *actually* engaged in any impropriety, rendering Plaintiff guilty in the eyes of the GL community without any chance to defend himself or clear his name, merely because Defendant claimed that she would always believe any woman, but without even revealing what purportedly had been alleged concerning Plaintiff or by whom.
39. Defendant further disclosed that, as a result of these purported transgressions – which violate the GL 'zero tolerance policy' – Plaintiff had been removed from the GL Group.
40. Defendants' false publications achieved their desired effect of exposing Plaintiff to contempt, aversion and vitriol.

41. Plaintiff's personal and professional reputations were damaged as the result of Defendants' defamatory statements.

42. Plaintiff suffered economic damages as the result of Defendants' defamatory statements including, but not limited to, loss of employment opportunities and diminished ability to market and publicize his work or otherwise earn profit from his works.

43. Plaintiff suffered emotional pain and suffering as the result of Defendants' defamatory statements.

44. Plaintiff is entitled to *per se* damages because the defamatory statements made by Defendant were inherently harmful, in that they addressed sexual morality and professionalism.

45. Plaintiff is further entitled to Actual Damages, Compensatory Damages, and Punitive Damages for Defendants' malicious, defamatory conduct, as Plaintiff has been damaged in an amount to be determined at trial.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**

46. Plaintiff repeats and realleges the foregoing paragraphs as if fully stated herein.

47. Based on the foregoing facts and circumstances, Defendants intentionally defamed Plaintiff and intentionally inflicted emotional harm by publishing the unsubstantiated allegations about Plaintiff.

48. In publishing the post with the intent to inflict said emotional harm, Defendants were condoning publication of inflammatory, unsubstantiated allegations and permitting the publication of false information about plaintiff with actual knowledge of the falsity, and a deliberate indifference to and an apparent approval of the publication of the false allegations about Plaintiff, with the consequence that Plaintiff has been effectively blackballed, with a ruined reputation, and denied well-earned economic opportunities,

thereby undermining and detracting from Plaintiff's well-being and livelihood.

49. The above actions and inactions by Defendants were so outrageous and utterly intolerable that they caused mental anguish and severe psychological and emotional distress to Plaintiff, as well as physical harm, financial loss, humiliation, loss of reputation and other damages.

50. As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of career opportunities, other economic injuries, and other direct and consequential damages.

51. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

52. Plaintiff repeats and realleges the foregoing paragraphs as if fully stated herein.

53. Based on the foregoing facts and circumstances, Defendants defamed Plaintiff and negligently inflicted emotional harm by creating the post and publishing the unsubstantiated allegations about Plaintiff.

54. In publishing the post with a blatant disregard for the truth of the allegations and blatant disregard for the emotional harm caused, Defendants were condoning publication of inflammatory, unsubstantiated allegations and permitting the publication of false information about plaintiff with actual knowledge of the falsity, and a deliberate indifference to and an apparent approval of the publication of the false allegations about Plaintiff. Defendants knew or should have known their outrageous conduct would result in the consequence that Plaintiff has been effectively blackballed, with a ruined reputation,

and been denied well-earned economic opportunities, thereby undermining and detracting from Plaintiff's well-being and livelihood.

55. The above actions and inactions by Defendants were so outrageous and utterly intolerable that they knew or should have known they would cause the mental anguish and severe psychological and emotional distress suffered by Plaintiff, as well as physical harm, financial loss, humiliation, loss of reputation and other damages.

56. As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of career opportunities, other economic injuries and other direct and consequential damages.

57. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Tortious Interference with Contractual Relations)**

58. Plaintiff re-alleges and incorporates herein by reference all prior paragraphs of this Complaint with the same force and to the same effect as though set forth at length herein.

59. Plaintiff was engaged in contractual relationships with One on One NYC and Next Level Studios LA to teach acting classes to groups of 20 students on a bi-monthly basis.

60. These aforementioned business relationships and deals involved Plaintiff and other members of the GL Group community, who have been familiar with Plaintiff via professional networking occurring via the GL Group community.

61. As such, Defendants were aware that Plaintiff and One on One NYC and Next Level Studios LA were engaged in business deals and were involved in contractual relationships.

62. Defendants' conduct, in banishing Plaintiff from the GL Group community, labeling

Plaintiff as someone who was in violation of the GL Zero Tolerance Policy, and ratifying statements that Plaintiff had engaged in predatory and/or harassing and/or offensive conduct that was viewed as harmful to female members of the GL Group community and/or crossing the line of propriety, disrupted the contractual relationships between Plaintiff and One on One NYC and Next Level Studios LA, in that these third parties were no longer willing to continue the business dealings with Plaintiff, given the unsubstantiated, false and defamatory allegations made by the Defendants against the Plaintiff. Thus, performance of the contracts with these third parties was prevented.

63. Defendants intended to disrupt the contractual relationships between Plaintiff and One on One NYC and Next Level Studios LA or knew that disruption of the performance of these contracts was substantially certain to result, or was certain to result, based on Defendants' conduct.

64. Plaintiff was substantially and significantly harmed, in an amount to be proven at trial, because these contracts and business deals with One on One NYC and Next Level Studios LA were cancelled and/or could not be performed, depriving Plaintiff of the benefits to which he would have been entitled under those contracts.

65. Defendants' conduct was a substantial factor in causing this economic harm to Plaintiff.

66. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Injurious Falsehood)**

67. Plaintiff re-alleges and incorporates herein by reference all prior paragraphs of this Complaint with the same force and to the same effect as though set forth at length herein.

68. Defendants knowingly and maliciously published the aforementioned false statements about Plaintiff with the intent to harm him.

69. Defendants also published the statements recklessly and without regard to the consequences the Plaintiff would suffer due to them publishing the malicious, false and unsubstantiated post and a reasonably prudent person would or should have anticipated that damage to the Plaintiff would naturally flow therefrom.

70. Specifically, the Defendants, on their Facebook page posted the following statement:

    *"Over the past week, several women have bravely come forward, putting themselves on the line, to report that members of this community – [NAME REDACTED] and Rob Margolies – crossed the line and caused them harm. I believe these women. I will always believe women and anyone who speaks up about sexual harassment, assault, and other abuses of power. These men have both been permanently removed from this group and will no longer be permitted to participate in any AGR activities, classes, events, or meetups. I realize that this action, and this statement has come far too late. For that and so much more I am deeply sorry."* (See **Exhibit C**)

71. This post was published to more than 13,000 members, who were members of the entertainment community that the Plaintiff is a part of, many of them clients or prospective clients of the Plaintiff.

72. Thus, the Defendants' post containing the false, unsubstantiated and damaging statements constituted an injurious falsehood.

73. Plaintiff's personal and professional reputations were damaged as the result of Defendants' false statements.

74. Plaintiff suffered economic damages as the result of Defendants' false statements including, but not limited to, loss of employment opportunities and diminished ability to market and publicize his work or otherwise earn profit from his works.

75. Plaintiff suffered emotional pain and suffering as the result of Defendants' false statements.

76. Plaintiff is further entitled to Actual Damages, Compensatory Damages, and Punitive

Damages for Defendants' malicious and injurious conduct, as Plaintiff has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

i. This Court's FINDING that the information published by Defendants was false and defamatory;

ii. This Court's FINDING That Defendants published the defamatory statements with malice;

iii. This Court's ORDER that Defendants issue a written retraction to each and every person to whom they originally published the false and defamatory statements;

iv. On the first cause of action for defamation, a judgment awarding the Plaintiff damages in an amount to be determined at trial, but in no event less than $1,500,000.00, plus interest, attorney's fees, expenses, costs and disbursements, as described below;

v. This Court's AWARD of *per se* damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

vi. This Court's AWARD of Actual and Compensatory damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

vii. This Court's AWARD of Punitive Damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

viii. Attorneys' fees as against Defendants jointly and severally, in an amount to be determined at trial;

ix. On the second cause of action for intentional infliction of emotional distress, a

judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of career and business opportunities, as well as loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

x. On the third cause of action for negligent infliction of emotional distress, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of career and business opportunities, as well as loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

xi. On the fourth cause of action for injurious falsehood, a judgment awarding the Plaintiff damages in an amount to be determined at trial, but in no event less than $1,500,000.00, plus interest, attorney's fees, expenses, costs and disbursements, as described below;

xii. This Court's AWARD of *per se* damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

xiii. This Court's AWARD of Actual and Compensatory damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

xiv. This Court's AWARD of Punitive Damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

xv. Attorneys' fees as against Defendants jointly and severally, in an amount to be determined at trial; and

    xvi.    Such other and further relief as the Court deems just and proper.

Dated this 30th day of April, 2021.

                                            Respectfully Submitted,

                                        By:_____
                                            Kiren Choudhry, Esq.
                                            Scott Wagner and Associates, P.A.
                                            250 South Central Boulevard, Suite 104
                                            Jupiter, FL 33458
                                            Telephone: (561) 653-0008
                                            Facsimile: (561) 653-0020