UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ROBERT MARGOLIES, | X ) | |
| Plaintiff, | ) ) | Case No.: 21-cv-02447 – FB-SJB |
| -against- | ) ) | **ORAL ARGUMENT REQUESTED** |
| JEN RUDOLPH a/k/a JENNIFER RUDOLPH and THE ACTOR'S GREEN ROOM, LLC, | ) ) ) | |
| Defendants. | ) ) | |
| | X | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

Dated:   New York, New York
         July 30, 2021

Stephen Reich
sreichesq@stephenreichlaw.com
Stephen Reich, Esq., Attorney at Law
745 Boylston Street
7th Floor
Boston, MA 02116
Telephone (917) 204-7024

*Attorney for Defendants Jen Rudolph
a/k/a Jennifer Rudolph and The Actor's
Green Room, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTIONS .......................................................................................................... 1

PROCEDURAL HISTORY ............................................................................................... 1

RELEVANT ALLEGATIONS IN THE AMENDED COMPLAINT, EXHIBITS
THERETO AND EXTRINSIC EVIDENCE PROVIDED BY DEFENDANTS
PURSUANT TO N.Y. CIV. RIGHTS LAW § 76(a) ...................................................... 2

ARGUMENTS ................................................................................................................... 6

I.    This Court Lacks Subject Matter Jurisdiction Under Fed. R. Civ. Pro 12(b)(1)
      (1) Because of Res Judicata/Collateral Estoppel ............................................... 6

II.   In the Alternative, if the Court Decides it Does Have Subject Matter Jurisdiction Over
      Plaintiff's Claims, it Should Still Dismiss Them for Failure to State a Claim Under
      Fed. R. Civ. Pro. 12(b)(6) ................................................................................ 8

STANDARD OF REVIEW ............................................................................................. 8

   A. Plaintiff's Defamation Claim Violates N.Y. Civ. Rights Law § 76(a)
      (New York's "Anti-SLAPP" Law) ..................................................................... 9
        i.    Public Interest ............................................................................... 10
        ii.   Actual Malice ................................................................................ 12
   B. Alternatively, Plaintiff's Defamation Claim Must be Dismissed Under
      Fed. R. Civ. Pro. 12(b)(6) For Failure to State a Claim Because the
      Statement is Opinion ....................................................................................... 14
        i.    Precise Meaning ............................................................................ 15
        ii.   Whether the Statement Can be Proven True or False ......................... 16
        iii.  Whether, in Taking into Account the Broader Context, the
              Average Reader Would Consider the Statement Fact or Opinion ......... 17
   C. Alternatively, Rudolph's Statement is Protected by the Qualified
      Or Common Interest Privileges ....................................................................... 18
        i.    Qualified Privilege ........................................................................ 18
        ii.   Common Interest Privilege .............................................................. 18
   D. All Of Plaintiff's Remaining Claims Fails to State a Claim Because
      They are Either Duplicative of the Defamation Claim or Fail
      on Their Own .................................................................................................. 20
        A. Intentional Infliction of Emotional Distress ................................... 20
        B. Negligent Infliction of Emotional Distress ..................................... 21
        C. Tortious Interference with Contractual Relations ............................ 22
        D. Injurious Falsehood ...................................................................... 23

CONCULUSION .............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Loksen,*
   239 F.3d 256 (2d Cir. 2001)...................................................................... 12, 19

*Alpha Mechanical Heating & Air Conditioning, Inc. v. Travelers Casualty*
   *& Surety Co. of America*, 133 Cal.App.4th 1319, 1333 (Cal. Ct. App. 2005) ...................... 6,8

*Armstrong v. Brookdale,*
   425 F. 3d 126 (2d Cir. 2005)...................................................................... 21

*Bell Atl. Corp. v Twombly,*
   550 U.S. 544 (2007)............................................................................ 9, 21

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC,*
   151 F. Supp. 3d 287 (E.D.N.Y. 2015) ,(*aff'd* 670 F. App'x 7321 (2d Cir. 2016) .................... 15

*Biro v Conde Nast,*
   833 F. Supp. 2d 441 (S.D.N.Y 2012)................................................................ 14

*Blake v. Race,*
   487 F.Supp.2d 187 (E.D.N.Y. 2007) ............................................................... 21

*Boarding School Review, LLC v. Delta Career Educ. Corp.,*
   No. 11 Civ. 8921 (DAB), 2013 WL 66705841 (S.D.N.Y. Mar. 29, 2013) .............................. 3

*Brian v. Richardson,*
   87 N.Y.2d 46, 51, 660 N.E.2d 1126 (1995)........................................................ 15

*BSH Hausgerate, GmbH v. Kamhi,*
   282 F. Supp. 3d 668 (S.D.N.Y. 2017)............................................................... 3

*Carvel Corp. v. Noonan,*
   3, N.Y.3d 182 (N.Y. 2004) ........................................................................ 23

*Chandok v. Klessig,*
   632 F.3d 803 (2d Cir. 2011)................................................................... 18, 19

*Church of Scientology Intern. v. Behar,*
   238 F.3d 168 (2d Cir. 2001)...................................................................... 12

*Coleman v. Grand,*
   No. 18CV5663ENVRLM, 2021 WL 768167, (E.D.N.Y. Feb. 26, 2021) ...................... *passium*

*Collins v. Giving Back Fund,*
   No. 18-CV-8812 (CM), 2019 WL 3564578 (S.D.N.Y. Aug. 6, 2019).................................... 21

*Condit v. Dunne,*
   317 F. Supp. 2d 344 (S.D.N.Y. 2004).............................................................. 3

*Dawkins v. Williams,*
   413 F.Supp.2d 161 (N.D.N.Y. 2006).......................................................... 20, 21

*Elliot v Donnegan*,
   469 F. Supp. 3d 40 (E.D.N.Y. 2020) ............................................................ 10

*Fischer v. Maloney*,
   43 NY2d 553 (1978). ..................................................................................... 20

*Ganske v. Mensch*,
   480 F. Supp. 3d 542 (S.D.N.Y. 2020) .......................................................... 22,

*Gasperini v. Ctr. for Humanities, Inc.*,
   518 U.S. 415 (1996) ...................................................................................... 10

*Gross v. New York Times Co.*,
   82 N.Y.2d 146, 623 N.E.2d 1163 (1993) ................................................. 15, 16

*Hacienda Mgmt., S. De R.L. De C.V. v. Starwood Cap. Grp. Glob. I LLC*,
   No. 12-0395 SC, 2012 WL 2838708 (N.D. Cal. July 10, 2012) ...................... 7

*Harris v. Queens Cty. Dist. Atty's Office*,
   No. 08-CV-1703, 2009 WL 3805457 (E.D.N.Y. Nov. 9, 2009) ...................... 23

*Harte-Hanks Communications, Inc. v Connaughton*,
   491 U.S. 657 (1989) ...................................................................................... 14

*Hussey v. New York State Dep't of L./Off. of Atty. Gen.*,
   933 F. Supp. 2d 399 (E.D.N.Y. 2013) ........................................................... 19

*In re Zyprexa Prod. Liab. Litig.*,
   No. 04-MD-1596, 2012 WL 1392993 (E.D.N.Y. Apr. 23, 2012) ...................... 7

*Information Control Corp. v. Genesis One Computer Corp.*,
   611 F.2d 781 (9th Cir.) .................................................................................. 17

*Intl. Shoppes v. At the Airport*,
   131 A.D.3d 926, 16 N.Y.S.3d 72 (2d Dep't 2015) .......................................... 9

*Jain v. Sec. Indus. & Fin. Markets Ass'n*,
   No. 08 CIV.6463 DAB, 2009 WL 3166684 (S.D.N.Y. Sept. 28, 2009) ............ 22

*Johson v. State*,
   334 N.E. 2d 590 (N.Y. 1975) ........................................................................ 21

*Kasada, Inc. v. Access Capital, Inc.*,
   No. 01 Civ. 8893, 2004 WL 2903776 (S.D.N.Y. Dec. 14, 2004) ................... 23

*Kasavana v. Vela*,
   172 A.D.3d 1042 (N.Y. App. Div. 2019) ...................................................... 17

*L.Y.E. Diamonds, Ltd. v. Gemological Inst. of Am., Inc.*,
   169 A.D.3d 589, 95 N.Y.S.3d 53 (2019) ...................................................... 20

*La Liberte v. Reid*,
   966 F.3d 79 (2d Cir. 2020) ........................................................................... 10

*Liebman v. Gelstien*,
   80 N.Y.2d 429 (N.Y. 1992) ........................................................................... 19

*Man v. Warner Bros. Inc.*,
    317 F. Supp. 50 (S.D.N.Y. 1970)................................................................ 12

*Mann v. Abel*,
    10 N.Y.3d 271, 885 N.E.2d 884, 856 N.Y.S.2d 31 (2008).......................... 14

*Masson v. New York Magaize, Inc.*
    501 U.S. 496 (1991).....................................................................................13

*Migra v. Warren City Sch. Dist, Bd. of Educ.*
    465 U.S. 75 (1984).........................................................................................6

*Murphy v American Home Prods. Corp.*,
    58 NY 2d 293 (1983) ..............................................................................20-21

*O'Brien v. Alexander*,
    898 F. Supp. 162 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 1479 (2d Cir. 1996) ............................... 23

*O'Brien v. City of Syracuse*,
    54 N.Y.3d 353 (1981) ....................................................................................8

*Palin v. New York Times Co.*,
    No. 17-CV-4853 (JSR), 2020 WL 7711593 (S.D.N.Y. Dec. 29, 2020) .................................. 9

*Rail v. Hellman*,
    726 N.Y.S.2d 629 (App. Div. 2001) ............................................................ 23

*Rice v. Crow*,
    81 Cal. App. 4th 725, 97 Cal. Rptr. 2d 110 (2000)........................................ 8

*Rivers v. Towers, Perrin, Forster & Crosby Inc.*,
    No. CV-07-5441 DGTRML, 2009 WL 817852 (E.D.N.Y. Mar. 27, 2009)........................... 21

*Roybal v. University Ford*,
    207 Cal.App.3d 1080 (Cal. Ct. App. 1989) .................................................. 6

*Sackler v. Am. Broad. Companies, Inc.*,
    71 Misc. 3d 693, 144 N.Y.S.3d 529 (N.Y. Sup. Ct. 2021): .................................... 14

*Sandler v. Simoes*,
    609 F. Supp. 2d 293 (E.D.N.Y. 2009) ........................................................ 14

*Seltzer v Bayer*,
    709 N.Y.S. 2d 21 (1st Dep't. 2000) ............................................................ 21

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*,
    230 F. Supp. 3d 290 (S.D.N.Y. 2017)........................................................ 16

*Steinhilber v Alphonse*,
    68 N.Y.2d 283 (N.Y.1986) .................................................................... 15, 16

*Time, Inc. v. Hill*,
    385 U.S. 374 (1967)................................................................................ 12

*Toker v. Pollak*,
    44 N.Y.2d 211 (1978) ................................................................................ 18

*Torrey Pines Bank v. Superior Court* (1989)
   216 Cal.App.3d 813 (1989). ................................................................ 6

*Tucker v. Wyckoff Heights Med. Ctr.*,
   52 F. Supp. 3d 583, 597 (S.D.N.Y. 2014)............................................ 14

*Valley Lane Indus.Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
   455 F. App'x 102 (2d Cir.2012) ........................................................... 23

*Versaci v. Richie*,
   30 A.D.3d 648 (N.Y. App. Div. 2006) ................................................ 15

*Vigoda v. DCA Prods. Plus Inc.*,
   293 A.D.2d 265 (N.Y. App. Div. 2002) ............................................... 23

**Other Authorities**

2018 *USA Today* article, a survey of hundreds of women in Hollywood said they had
   experienced sexual misconduct while pursuing their careers
   https://www.usatoday.com/story/life/people/2018/02/20/how-common-sexual-misconduct-
   hollywood/1083964001/.......................................................................... 11

2020 study that found that 42% of women in Hollywood polled said they had experienced
   unwanted sexual attention at some point in their careers.
   https://variety.com/2020/biz/news/metoo-movement-hollywood-anita-hill-survey-
   1234815822/........................................................................................... 11

GL is "publicly accessible", it is a private group that requires permission to join.
   https://www.facebook.com/groups/OfficialGreenLounge/about.............. 3

Second Restatement § 46, Comment ......................................................... 21

The Restatement (Second) of Torts § 566 ................................................ 17

The Sponsor Memorandum for the Amendments, S52A
   https://www.nysenate.gov/legislation/bills/2019/s52)......................... 3, 9

**Rules**

Fed. R, Civ. P 12(b)(6)................................................... 1, 8-9, 12, 24

Fed. R. Civ. P 12(b)(1)...................................................... 1, 8, 29

N.Y. Civ. Rights § 70(a) and § 76(a)............................................ *passium*

N.Y. Civ. Rights Law § 51 ..................................................... 12,

N.Y. Civ. Rights Law § 76 ................................................... 1, 2, 5

28 U.S.C. § 1332................................................................. 10

28 U.S.C. § 1738................................................................. 6

Defendants Jen Rudolph ("Rudolph") and The Actor's Green Room, LLC ("AGR") (collectively "defendants") submit this Memorandum of Law in support of their Motion to Dismiss all of Plaintiff Rob Margolies' ("plaintiff") claims for relief in his Amended Complaint ("Am. Compl.").

## INTRODUCTION

For the reasons set forth herein, all of plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because plaintiff voluntarily dismissed the identical case with prejudice in a California state court. If this court finds that it has subject matter jurisdiction, then the defamation claim should be dismissed per Fed. R. Civ. P. 12(b)(6) for failure to state a claim pursuant to N.Y. Civ. Rights Law § 76(a), New York's amended Anti-SLAPP statute ("Anti-SLAPP"), because defendants' allegedly defamatory statement ("Statement') involved a "matter of public interest" or, alternatively because the Statement is non-actionable opinion and/or shielded by the New York qualified or common interest privileges. As the rest of plaintiff's claims all flow directly from the Statement and are unsupported by the facts, they too must be dismissed as duplicative of the defamation claim or for failure to state a claim.

## PROCEDURAL HISTORY

Plaintiff first filed suit in the Superior Court of the State of California, County of Los Angeles on July 2, 2020, against Defendant Jen Rudolph for damages for false light, intentional and negligent interference with prospective economic relations and intentional interference with

contractual relations, as well as for injunctive relief (Case no. 20STCV24913) ("CA Compl.").[1] Defendant Rudolph moved to dismiss the California action for lack of personal jurisdiction. Based on the court's tentative order granting the motion to dismiss, plaintiff's counsel at the telephone hearing conceded and it was agreed that the parties would stipulate to a voluntary request for a dismissal within 90 days. The court issued an Order of Dismissal on February 2, 2021, without prejudice. See "Exhibit B" to attorney for defendants' Stephen Reich's Declaration ("Reich Decl."). Three months later plaintiff filed a voluntary Request for Dismissal, **with prejudice,** that was entered by the Clerk on May 3, 2021. Reich Decl., Exhibit C.

On the same date, plaintiff filed this federal action, essentially asserting the same claims under New York law and alleging damages ranging from $500,00 to $1.5 million. See plaintiff's Amended Complaint, Exhibit A to Reich Decl., ("Am. Compl."), in general. On May 5, 2021, this Court issued an Order to Show Cause for the plaintiff to allege that complete diversity existed. Docket Entry #7. Plaintiff filed the Am. Compl. properly alleging complete diversity on May 10, 2021, and realleged all of his claims.

### RELEVANT ALLEGATIONS IN THE AMENDED COMPLAINT, EXHIBITS THERETO AND EXTRINSIC EVIDENCE PROVIDED BY DEFENDANTS PURSUANT TO N.Y. CIV. RIGHTS LAW § 76(a), ET. AL

Defendant Jen, a/k/a Jennifer Rudolph ("Rudolph") is the owner and sole member of co-defendant "The Actor's Green Room, LLC" ("AGR"), a coaching and consulting business for actors. See Am. Compl., par. 16 and Rudolph Affidavit ("Rudolph Aff."), attached to Reich

---

[1] Plaintiff initially sued the wrong person entirely--"Jennifer Rudolph Walsh"-- a California resident, despite knowing Rudolph personally and knowing that she lived in New York.

Decl. as "Exhibit D", par. 2.[2] Both defendants are located in New York. Am. Compl., par. 14.

Plaintiff Robert Margolies is a writer, director and producer resident in California. Am Compl.,

par. 15. The parties first met in or around November of 2018 when AGR hired plaintiff as an

independent contractor to teach and coach AGR clients. Rudolph Aff., par. 4. Rudolph also

welcomed plaintiff into her private Facebook group, "The Green Lounge" ("GL"). Am. Compl.,

par. 22, Rudolph Aff., par. 5.[3] Defendants use GL to promote classes and workshops as well as

to foster education, support and connection among its members. Discussion topics are not limited

to acting or AGR and sometimes spill over into broader cultural issues and current events.

Defendants have a zero-tolerance policy for sexual harassment, demeaning or defaming

members, racial slurs, microaggressions and other bad acts. Am. Compl., par. 19, Exhibit B and

Rudolph Aff., par. 7.

In the summer of 2018, an AGR intern and GL member ("Intern") asked to talk with

Rudolph privately. In their meeting, the Intern told Rudolph that she worked with plaintiff on the

set of a movie he was shooting called "Love and Communication" and that she had personal

---

[2] In support of their Motion to Dismiss under N.Y.S. §76(a), defendants have submitted an affidavit and evidence not to prove the truth of the matter, but to show the broader context surrounding the allegedly defamatory Statement. The Court may take judicial notice of such extrinsic evidence pursuant to the amendments to the New York Anti-SLAPP Law, N.Y. Civ. Rights Law § 70(a) and § 76(a) (committee notes available at https://www.nysenate.gov/legislation/bills/2019/s52), as well New York law regarding defamation cases involving statements made over the Internet. See *Condit v. Dunne*, 317 F. Supp. 2d 344, 357–58 (S.D.N.Y. 2004) where the court took judicial notice of documents that "aid the Court in its determination of whether plaintiff states a claim for relief [for slander]" and that helped "place [the defendant's] comments in the broader social context." See also *BSH Hausgerate, GmbH v. Kamhi*, 282 F. Supp. 3d 668, 670 n.1 (S.D.N.Y. 2017) (*quoting Boarding School Review, LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921 (DAB), 2013 WL 6670584, at 1 n.1 (S.D.N.Y. Mar. 29, 2013) ("A district court nonetheless "has the discretion to take judicial notice of internet materials.")
[3] Contrary to plaintiff's assertion that GL is "publicly accessible", it is a private group that requires permission to join. See https://www.facebook.com/groups/OfficialGreenLounge/about.

knowledge that he sexually harassed the lead actress and members of the crew, witnessed him make racist, sexist and homophobic comments and said that the lead cast and several members of the crew quit due to his behavior, resulting in him getting banned from set.[4] Rudolph Aff., par. 8, Exhibit 1. Rudolph believed the Intern and though she took no immediate remedial action, she did begin to distance herself from plaintiff. Rudolph Aff., par. 9.

Then, on October 29, 2018, a woman who claimed she belonged to several women-in-filmmaking groups emailed Rudolph to warn her that plaintiff sexually harassed an actress and crew members on a film he was shooting and that she should part ways because "he was a liability for her business." Rudolph Aff., par. 10, Exhibit 3. The twin accounts about plaintiff deeply troubled Rudolph and reminded her of the time plaintiff once told her he planned to bed a young actress by casting her in a movie-- classic #metoo behavior. At the time, Rudolph let the comment slide, but now she began to have doubts about plaintiff. Rudolph Aff., par. 11.

Then, in or around April of 2019, another woman approached Rudolph to tell her how a different male AGR acting coach (herein referred to as "X", now deceased), used highly inappropriate and sexually suggestive "acting techniques" that made her feel uncomfortable. Rudolph confronted X and stopped referring him clients. Rudolph Aff., par. 12.

Fast forward to May 25, 2020, and the death of George Floyd. The GL is abuzz about social injustice, police brutality, systemic racism, the persistent abuse and sexual harassment of women in the entertainment industry (despite years of #metoo), Black Lives Matter and more. Am. Compl., Exhibit D and Rudolph Aff., pars. 13 and 14. Around the same time, X's accuser

---

[4] Again, defendants submit these out of court statements not for the truth of the matter or as character evidence, but solely to the issue of whether they acted with constitutional or common law malice in making the Statement. Also note that the referenced Exhibit 1 to Rudolph's Affidavit is a memorialization of the events by the Intern that she witnessed take place on the film set, which she emailed to Rudolph on June 5, 2020, in reaction to the Statement.

reached back out to Rudolph, saying she was still traumatized by the incident and asked if Rudolph had investigated it any further. Rudolph Aff., par. 13, Exhibit 3.

Compelled by current events and a need to protect her community and fellow women from X, Rudolph hired a prestigious public relations firm to help draft a statement about X, which she published in GL on or around June 1, 2020 (before the Statement at issue in this action). Rudolph did not name X (or anyone else) but referenced "a male AGR acting coach" who had been accused of sexual impropriety. Rudolph Aff., par. 13.

Unfortunately, the statement backfired and GL members slammed Rudolph and AGR for not taking action sooner. A wildfire broke out in GL. Members speculated about the identity of the mystery male acting coach which caused some to make thinly veiled allusions to plaintiff and his own alleged sexual misconduct (e.g. "Slob Thar-Goalies"). See Am. Compl., Exhibit D and Rudolph Aff., par. 14, Exhibit 4. Word got back to plaintiff who, through his assistant, threatened Rudolph with a lawsuit if she didn't stop the barrage in GL. Rudolph Aff., par. 14 and Exhibit 5. Rudolph desperately tried to contain the fallout. She agonized over her next steps and further consulted with the public relations firm. Rudolph Aff., par. 14. After a day of intense deliberations, Rudolph decided she had an ethical and moral duty, and a duty under the rules of GL, to protect her fellow women, friends and colleagues in the industry, as well as her business and reputation. Thus, on June 3, 2020, she posted the Statement that is the basis for plaintiff's case. Am. Compl., Exhibit C. See also Rudolph Aff., par. 15.

## ARGUMENTS

### I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. PRO. 12(b)(1) BECAUSE OF RES JUDICATA/COLLATERAL ESTOPPEL

The doctrine of res judicata bars this action because all of plaintiff's New York claims arise out of the same facts and circumstances as the previously dismissed California case and Plaintiff voluntarily dismissed his California state claim **with prejudice** pursuant to California Code of Procedure Section 581.[5]

First, it is black letter law that a federal court must give to a prior state-court judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra* v. *Warren City Sch. Dist. Bd. of Educ,* 465 U.S. 75, 81 (1984). See also 28 U.S.C. § 1738.  In California, voluntary dismissals with prejudice are called "retraxits" and are deemed final on the merits. See *Alpha Mechanical Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America*, 133 Cal.App.4th 1319, 1330 (Cal. Ct. App. 2005). "[A] retraxit — modernly effected by a plaintiff's filing of a dismissal of his or her action with prejudice — is *deemed to be a judgment on the merits* against that plaintiff." (*quoting Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, at 820.)

---

[5] The Code reads in relevant part:

   "An action may be dismissed in the following cases:
    (a) By plaintiff, by written request to the clerk, filed with the papers in the case . . . at any time before the actual commencement of trial. . . .
    (e) The provisions of subdivision (a) shall not prohibit a party from dismissing with prejudice, either by written request to the clerk or oral or written request to the judge, as the case may be, any cause of action at any time before decision rendered by the court. And section 581d reads in relevant part, "A written dismissal of an action shall be entered in the clerk's register and is effective for all purposes when so entered."

*Roybal v. University Ford*, 207 Cal.App.3d 1080, 1084 (Cal. Ct. App. 1989).

More broadly, California uses the "primary right" analysis in determining whether a plaintiff has stated a new cause of action sufficient to *avoid* res judicata effect. "[A] cause of action is comprised of a primary right of the plaintiff, a corresponding primary duty of the defendant, and a wrongful act by the defendant constituting the breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." *In re Zyprexa Prod. Liab. Litig.*, No. 04-MD-1596, 2012 WL 1392993, at 8 (E.D.N.Y. Apr. 23, 2012) (the court there barred plaintiffs' claim for wrongful death of one of the plaintiff's mother where the other plaintiff had sued and voluntarily dismissed with prejudice the same claim against the same defendant in California state court).

Here, plaintiff checked the "with prejudice" box and his counsel signed and e-filed the "CIV-110" request for voluntary dismissal with the clerk *after* the California Judge issued both his tentative and final orders. Thus, plaintiff voluntarily dismissed his case with prejudice in California, making it a "retraxit" and final on the merits. Furthermore, Rudolph and Margolies are parties to both actions, AGR is in privity with Rudolph and plaintiff seeks to redress the same "primary right" while alleging the same wrongful act: redress for reputational harm caused by an allegedly defamatory statement. Accordingly, all of plaintiff's claims are "but a single cause of action" under California law and are barred by res judicata.[6]

---

[6] New York law would render the same result. See *Hacienda Mgmt., S. De R.L. De C.V. v. Starwood Cap. Grp. Glob. I LLC*, No. 12-0395 SC, 2012 WL 2838708, at 3 n 2 (N.D. Cal. July 10, 2012). "The ultimate outcome of this case would remain the same if the Court were to apply New York res judicata law. The primary distinction between New York and California's res judicata laws is the different tests used to determine whether a later action involves the same cause of action as the first one. California courts use a primary rights analysis to make this determination. New York courts use a far broader transactional test, whereby, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of

For <u>collateral estoppel/issue preclusion</u>, the predominant rule in California is that a retraxit is not necessarily an issue "actually litigated". *Rice v. Crow,* 81 Cal. App. 4th 725, 736–37, 97 Cal. Rptr. 2d 110 (2000). However, there are a line of California cases that do hold retraxits as "issues litigated" under certain circumstances. See *Alpha Mechanical Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America*, 133 Cal.App.4th 1319, 1333 (Cal. Ct. App. 2005). Regardless, plaintiff has pled New York versions of his prior dismissed claims that arise out of the same facts and circumstances. thereby triggering preclusive effect.

In sum, plaintiff affirmatively chose to dismiss his case with prejudice after the order to dismiss for lack of personal jurisdiction without prejudice was granted. Thus, plaintiff's claims are precluded by res judicata, claim and/or issue preclusion and this court has no subject matter jurisdiction over them and they all should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(1).

II.     **IN THE ALTERNATIVE, IF THE COURT DECIDES IT DOES HAVE SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS, IT SHOULD STILL DISMISS THEM FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. PRO. 12(b)(6)**

**STANDARDS OF REVIEW**

Defendants' Motion carries different standards of review. For the defamation claim, if the Court applies New York's recently amended Anti-SLAPP (N.Y. Civ. Rights Law § 76(a)), plaintiff must show by clear and convincing evidence that defendants acted with actual malice-- "knowledge of the allegedly defamatory statement's falsity or with reckless disregard of whether it was false." *Coleman v. Grand*, No. 18CV5663ENVRLM, 2021 WL 768167, at 9 (E.D.N.Y. Feb. 26, 2021) (a copy of which is attached to the Reich Decl. as "Exhibit E") .

---

transactions are barred, even if based upon different theories ...."" (*quoting O'Brien v. City of Syracuse,* 54 N.Y.3d 353, 357–58 (1981) (*internal citations omitted*)).

8

If the Court does not apply the Anti-SLAPP, it should still dismiss all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because he has not pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## A.   PLAINTIFF'S DEFAMATION CLAIM VIOLATES N.Y. CIV. RIGHTS LAW § 76(A) (NEW YORK'S "ANTI-SLAPP" LAW)

Prior to its amendment on November 11, 2020, the New York Anti-SLAPP statute defined "an action involving public petition and participation" narrowly to include only claims "brought by a public applicant or permittee, and [that are] materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission." See *Intl. Shoppes v. At the Airport,* 131 A.D.3d 926, 928, 16 N.Y.S.3d 72 (2d Dep't. 2015). See also *Palin v. New York Times Co.*, No. 17-CV-4853 (JSR), 2020 WL 7711593 at 2 (S.D.N.Y. Dec. 29, 2020) (*quoting Intl. Shoppes*). Now, the amended Anti-SLAPP provides a cause of action for:

"(1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." N.Y. Civ. Rights Law § 76(a) (1-2). Moreover, the Sponsor Memorandum for the Amendments, S52A (full text available at https://www.nysenate.gov/legislation/bills/2019/s52) instructs that "Public interest" shall be construed broadly, and shall mean any subject other than a purely private matter." See also *Coleman,* at 16. The relevant tests are proof by the defendant that the action involved "matters of public interest" and if that burden is established, clear and convincing evidence by plaintiff that the alleged defamatory statement was made with "actual malice". N.Y. Civ. Rights Law

9

§76(a)(1)(2), *Coleman* at 18. The court in *Coleman* also held that the Anti-SLAPP is applicable in federal court for cases sitting in diversity if it concerns state substantive law like defamation: "It is a hornbook rule that "federal courts sitting in diversity apply state substantive and federal procedural law." (*quoting Gasperini v. Ctr. for Humanities*, *Inc*., 518 U.S. 415, 427 (1996). The court continued: "The anti-SLAPP provision at issue here, §76(a), applies in federal court because it is "manifestly substantive," governing the merits of libel claims and increasing defendants' speech protections." (*citing to, cf, La Liberte v. Reid*, 966 F.3d 79, 86 n.3 (2d Cir. 2020) (finding California anti-SLAPP law's "special motion to strike" procedural).

*Coleman,* at 14-15.

### i. "PUBLIC INTEREST"

In *Coleman,* the defendant ("Grand") circulated an email to friends and colleagues accusing her ex-boyfriend, a prominent jazz musician, of emotional abuse during their rocky relationship. Reich Decl., Exhibit E. Judge Vitaliano found it persuasive that the defendant framed her statements as her "contribution to the #metoo movement", which the court accepted as a matter of "public interest" under the amended Anti-SLAPP and thereby dismissed both parties' defamation claims. See also *Elliot v Donnegan*, 469 F. Supp. 3d 40, 52-53 (E.D.N.Y. 2020) (finding that #metoo qualified as a "public controversy").

Like Grand, Rudolph framed her Statement in a similarly broad context: "Dear Members of the Green Lounge, I know that this has been a very difficult week in the world and in this community." Am. Compl., Exhibit C. By "difficult week in the world", Rudolph is referring to the death of George Floyd on May 25, 2020, and the civil unrest that followed. Rudolph Aff., par. 13. She also references "racial violence" and "systemic racial injustice taking the lives of black people and other people of color in this country" and ruminates about a "culture of silence

and abuse that continues to plague every area of life, particularly for women and non-binary

folx[7] including in this community." GL member comments also infer that the Statement arose out

of a larger discussion about societal ills. See Am. Compl., Exhibit D.

Furthermore, a side-by-side comparison of parts of Rudolph and Grand's statements

further illustrates their striking similarity:

> Grand:   "her letter starts by saying she wants to **"speak up"** in part **"for the sake of other young women."** *Coleman,* at 18.
>
> Rudolph:   **"I believe these women. I will always believe women and anyone who speaks up about sexual harassment, assault, and other abuses of power."** Am. Compl., par. 29 and Exhibit C.

Moreover, the heart of the Statement—allegations of sexual misconduct by those in

power against women in the entertainment industry-- remains just as relevant today as it did in

the early days of the #metoo movement. For example, according to a 2018 *USA Today* article, a

survey of hundreds of women in Hollywood said they had experienced sexual misconduct while

pursuing their careers. https://www.usatoday.com/story/life/people/2018/02/20/how-common-

sexual-misconduct-hollywood/1083964001/. And a 2020 study found that 42% of women and

men in Hollywood polled said they had experienced unwanted sexual attention at some point in

their careers *between 2019-2020.* https://variety.com/2020/biz/news/metoo-movement-

hollywood-anita-hill-survey-1234815822/.

To summarize, it is patent in light of the events of the past few years that discussions of

race and sexual harassment involve matters of "public interest". The news is overflowing with

incidents of racism, police killings of Black Americans, domestic violence and the movements

---

[7] "Folx" is a modern alternative to "folks" that includes more than gender neutral individuals,
similar to "Latin-X".

that have grown in response such as #metoo, "Black Lives Matter", "Antifa" and more. It is literally 'all the talk' on the airwaves, on social media, in our universities and colleges and in Congress, perhaps even more the case at the time Rudolph made her Statement. Such expressions receive protection under the statute as they have for years under New York common law. "The Court is guided by this legislative directive, as well as the New York courts' "extremely broad interpretation" of statements on "matters of public concern," which likewise receive heightened protections." *Coleman,* at 8 (*quoting Albert v. Loksen*, 239 F.3d 256, 269 (2d Cir. 2001).

For the foregoing reasons and pursuant to *Coleman*, defendants' Statement falls squarely within New York law and the amended Anti-SLAPP's purview of matters of "public interest".[8]

## ii.   ACTUAL MALICE

When the defendant shows that its expression involved a matter of public interest, the plaintiff must "establish by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false. N.Y. Civ. Rights Law § 76(a) (2). To clarify, "despite its name, the actual malice standard does not measure malice in the sense of ill will or animosity, but instead the speaker's subjective doubts about the truth of the publication." *Church of Scientology Intern. v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001). See also *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (actual malice "should not be confused with the concept of malice as an evil intent or a

---

[8] See *Man v. Warner Bros. Inc.*, 317 F. Supp. 50, 53 (S.D.N.Y. 1970) for other New York law on the issue where the court found Woodstock (as in the festival) a matter of "public interest" under N.Y. Civ. Rights Law § 51. See also *Time, Inc. v. Hill*, 385 U.S. 374 (1967) where a family sued Time Magazine for running an error-laden article about their traumatic experience of being held captive by escaped convicts in their home in a story about an upcoming play that fictionalized the ordeal. "We have no doubt that the subject of the Life article-- the opening of a new play linked to an actual incident-- is a matter of public interest." *Id.* at 388.

motive arising from spite or ill will"). In determining "subjective doubts", a "court will typically infer actual malice from objective facts." *Coleman,* at 9.

Here, the objective facts show that Rudolph did not know her Statement to be false or act with "reckless disregard for the truth" when she published it. Rudolph Aff., in general. On the contrary, the exhibits attached to the Reich Decl. show that multiple women, including a former intern of AGR, came forward with credible allegations to alert Rudolph before June 3, 2020-- the date defendants published the Statement--that plaintiff had engaged in forms of sexual harassment and other bad acts on a film set of a movie he was directing that were so despicable that much of the cast and crew staged a walk-out. Rudolph Aff., par. 8 and 10, Exhibits 1 and 2. Again, the accounts reminded Rudolph that plaintiff once confided to her that he planned to offer an actress a role just to sleep with her. Rudolph Aff., par. 11. Simultaneously, members of GL charged defendants with "harboring sexual predators" and demanded she take action. As a result of the above and in order to protect her and her business' reputation as well as out of an ethical concern that she must finally speak out and respond to this avalanche of credible allegations from multiple women, defendants issued the Statement and banned plaintiff from GL and from teaching at AGR. While expressing some regret that she had not acted quicker, Rudolph did act on her sincere belief in the truth of the allegations--the opposite of malice.

As for plaintiff, other than conclusory allegations in the Amended Complaint, he has made no credible showing that defendants published the Statement with subjective knowledge that it was false or with reckless disregard for the truth. Moreover, contrary to plaintiff's allegation that defendants did not conduct due diligence (Am. Comp., par. 31), Rudolph had been put on notice about plaintiff for years. She only issued the Statement and dismissed him from her community after GL members turned their collective rage about current events and

13

sexual harassment on to her and AGR for allegedly "harboring" him and X. *Supra*, Rudolph Aff., par. 14.[9]

For the foregoing reasons, defendants have met the tests under New York's amended Anti-SLAPP and this Court should dismiss plaintiff's defamation claim.

### B.   ALTERNATIVELY, PLAINTIFF'S DEFAMATION CLAIM MUST BE DISMISSED UNDER FED. R. CIV. PRO. 12(B)(6) FOR FAILURE TO STATE A CLAIM BECAUSE THE STATEMENT IS OPINION

Courts are not only empowered but encouraged to dismiss defamation claims at the pleading stage to promote judicial efficiency and prevent the chilling of free speech. *Biro v Conde Nast*, 833 F. Supp. 2d 441, 456 (S.D.N.Y 2012).

Furthermore, opinions are not actionable in New York. "… statements of opinion are not defamatory; instead, they receive "absolute protection" under the New York Constitution. *Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583, 597 (S.D.N.Y. 2014). "Whether a particular statement constitutes an opinion or an objective fact is a question of law." *Sandler v. Simoes*, 609 F. Supp. 2d 293, 301 (E.D.N.Y. 2009) (*quoting Mann v. Abel,* 10 N.Y.3d 271, 276, 885 N.E.2d 884, 856 N.Y.S.2d 31 (2008).

New York courts use a three-factor analysis to distinguish statements of fact that are actionable from statements of opinion that are not:

"(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social

---

[9] Nor did defendants have a duty to investigate under the law. See *Sackler v. Am. Broad. Companies, Inc.*, 71 Misc. 3d 693, 699, 144 N.Y.S.3d 529 (N.Y. Sup. Ct. 2021): "However, it is well settled that a "failure to investigate will not alone *"*support a finding of actual malice."" (*quoting Harte-Hanks Communications, Inc. v Connaughton*, 491 US 657, 692 (1989).

context and surrounding circumstances are such as to " 'signal ... readers or listeners that what is being read or heard is likely to be opinion, not fact.'" *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153, 623 N.E.2d 1163 (1993) (*quoting Steinhilber v Alphonse,* 68 N.Y.2d 283, at 292).

The fact that Rudolph made her statement in the GL private Facebook group that served as a forum for members to discuss social as well as industry issues (*supra*, Rudolph Aff., par. 7) is significant. "New York courts have consistently protected statements made in online forums as statements of opinion rather than fact." *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015), *aff'd,* 670 F. App'x 731 (2d Cir. 2016). See also *Versaci v. Richie*, 30 A.D.3d 648, 649 (N.Y. App. Div. 2006) (statement written on an internet public message board was opinion, in part, because such forums are where "people air concerns about any matter."). Lastly, "In addition to considering the immediate context in which the disputed words appear, the courts are required to take into consideration the larger context in which the statements were published, including the nature of the particular forum." *Brian v. Richardson,* 87 N.Y.2d 46, 51, 660 N.E.2d 1126 (1995).

Here, Rudolph posted a mea culpa on Facebook in response to accusations and vitriol in GL and as an act of solidarity with her fellow women and victims at large. The contextual background would tell a reasonable reader the Statement was opinion, not fact.

### i.  Precise meaning

Rudolph's Statement does not have a "precise meaning"—on the contrary it is vague and ambiguous. To wit, it reads that multiple women came forward with allegations that plaintiff and X "crossed the line and caused them harm" (*supra* and Am. Compl., Exhibit C). These are vague assertions that can't be proven true or false (what does "cross the line" mean? What type of harm?). She follows with "I believe these women." But it's not clear on the face of the Statement what Rudolph believes-- the women's accounts--undefined--or that plaintiff and X are guilty of

15

sexual misconduct. Adding to the vagueness, the next sentence reads "I will always believe women and **anyone** who speaks up about sexual harassment, assault, **and any other abuses of power.**" (emphasis added). These statements are similar to those in *Small Bus. Bodyguard Inc. v. House of Moxie, Inc*., 230 F. Supp. 3d 290, 312 (S.D.N.Y. 2017), where the district court found the language "engaged in 'extortion, manipulation, fraud, and deceit' a "vague statement… of the 'loose, figurative, or hyperbolic' sort that is not actionable for defamation."

Also, like the defendant in *Coleman*, defendants' Statement can be read as Rudolph's "personal surmise" built upon disclosed facts that multiple women accused plaintiff of some sort of sexually inappropriate behavior and that she found the women credible. New York treats such statements as opinion. *Gross, supra* at 155.

### ii.   Whether the statement can be proven true or false

Rudolph's Statement is also incapable of being proven true or false. Rudolph did not outright accuse plaintiff of committing sexual offenses or crimes against women-- only that multiple women had reported to her that plaintiff and X "crossed the line" and "caused them harm", which are both subjective descriptions of feelings to which only the women who came forward could attest. Accordingly, like the defendant in *Coleman*, Rudolph's language is more "nuanced" than plaintiff claims. *Id.* at 23.[10]

---

[10] Plus, Rudolph did not refer to undisclosed facts in making her statement. She laid them out in full: several women approached her and accused plaintiff and X of sexual misconduct and she chose to believe them, just as she pledged to believe anyone who claims the same or in the case of assault or rape, worse (*supra*). "The actionable element of a "mixed opinion" is not the false opinion itself--it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." *Steinhilber, supra* at 290.

Also, the Statement does not refer to undisclosed facts. Instead, Rudolph laid out all the facts to explain why she moved on from plaintiff and X (*supra)*. ""A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."'" *Steinhilber, supra* at 290 n.3 (*quoting The Restatement (Second) of Torts § 566*). Plus, she published it amidst a heated debate. "...[E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an `audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole.'" *Id*. at 294 (*quoting Information Control Corp. v. Genesis One Computer Corp.,* 611 F.2d 781, 784 (9th Cir.). While the Statement was measured in tone, Rudolph published it in a panic and in response to the turmoil raging in GL at the time.

### iii. Whether, in taking into account the broader context, the average reader would consider the statement fact or opinion

Defendants posted the Statement in response to multiple issues of broader, public interest. Plus, GL members already knew about the allegations against plaintiff and X as evident from the comments flying around the GL forum in the days leading up to the publication. Rudolph Aff., par. 13 and Exhibit 4. Moreover, the language and overall tone of the Statement speak to victim's and "folx" rights in general. Thus, the average reader would view the Statement as an explanation as to why she ousted the two men in light of current affairs, not whether or not they were actually sexual predators. Contrast with *Kasavana v. Vela*, 172 A.D.3d 1042 (N.Y. App. Div. 2019) where the court found the following defendant's statements actionable "[I] was a victim of IRS Identity Theft", "someone filed an EZ form with suspicious WRONG info","[defendant had] reason to believe" that the plaintiff "had access to [her] records and possibly did this" and that the plaintiff "is a very [d]angerous individual and should NOT be in

charge of accounting/monies at Skyline or any company for that matter." *Id.* at 1043. Rudolph's Statement is far more opaque.

For the foregoing reasons, the Statement is a non-actionable opinion and the defamation claim should be dismissed.

## C. <u>ALTERNATIVELY, RUDOLPH'S STATEMENT IS PROTECTED BY THE QUALIFIED OR COMMON INTEREST PRIVILEGES</u>

Under New York law, if the allegedly defamatory statement falls into one of two common law privileges--qualified or common interest-- otherwise defamatory statements are not actionable unless the plaintiff can defeat the presumption. *Chandok v. Klessig,* 632 F.3d 803, 814 -817 (2d Cir. 2011).

### i. Qualified Privilege

Qualified privilege is found where a statement is "fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned." *Toker v. Pollak*, 44 N.Y.2d 211, 219 (1978).

Here, Rudolph posted her Statement in a private, business Facebook Group (GL) that has rules of conduct, including a "zero-tolerance" policy against sexual harassment. Am. Comp., par. 19. Accordingly, Rudolph acted under a professional duty to enforce the GL rules. Rudolph also acted under a moral duty she felt she owed her fellow women, GL members and community. Rudolph Aff., par. 15. Regardless, in no case did she intend to injure plaintiff and X out of spite or ill will. Rudolph Aff., par. 17. Plus, she ended her post with an apology for not acting sooner, meaning her objective intent was at least in part to placate the GL members' fury about "harboring" plaintiff and X. Am. Compl., Exhibit C. Since defendants acted out of a moral obligation and to abide by the GL rules, the Statement is protected by the qualified privilege.

### ii. Common Interest Privilege

The Statement is also protected by the "common interest privilege", which "extends to a communication made by one person to another upon a subject in which both have an interest." *Liebman v. Gelstien*, 80 N.Y.2d 429, 430 (N.Y. 1992). Defendants published the Statement in GL to its members. Defendants and the members share the common interest of elevating members' acting and entertainment careers, which in turn drives business to AGR. Am. Compl., par. 18 and Exhibit B. In *Chandok*, the court found that a senior scientist who exposed a post doctorate graduate who worked for him for allegedly falsifying data was shielded from defamation by both the qualified and common interest privileges. The court explained that just like qualified privilege, to defeat the common interest privilege presumption, a plaintiff must prove actual malice (knowledge that the statement was probably false) or common law malice (ill will, malicious intent) at least by a preponderance of the evidence. For common law malice, plaintiff must show the ill will was the "one and only purpose" for defendant's conduct. *Id.* at 816-818. The common interest privilege has also been applied to employee termination cases: "Communications made by supervisors or coworkers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge, fall within the privilege." *Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001). "The privilege creates a rebuttable presumption of good faith that constitutes a complete defense to defamation, and the plaintiff may only rebut this presumption by demonstrating that the statement in question is false and that the defendant abused the privilege." *Hussey v. New York State Dep't of L./Off. of Atty. Gen.,* 933 F. Supp. 2d 399, 414 (E.D.N.Y. 2013).

As discussed above, defendants objectively posted the Statement for several reasons, none of them malicious. To review, Rudolph didn't aim her Statement solely at plaintiff—she

also discussed X. Second, the Statement's language references a wide range of social issues in addition to the allegations against plaintiff and X. Third, Rudolph's motivation in making the Statement was based on socially conscious, moral and professional duty and self-preservation and she only posted it after staying quiet became untenable. Rudolph Aff., pars. 13-17. Fourth, plaintiff's own Am. Compl. Exhibit D shows GL members already suspected him of the accused acts prior to Rudolph naming him . See also Rudolph Aff., pars. 14 and 17 and Exhibits 4 and 5. Fifth, plaintiff has not pled more than bare assertions of malice, which "do not suffice" to defeat the presumption. See *L.Y.E. Diamonds, Ltd. v. Gemological Inst. of Am., Inc.*, 169 A.D.3d 589, 591, 95 N.Y.S.3d 53, 55–56 (2019). Therefore, the Statement is protected by both the qualified and common interest privileges under New York law and the defamation claim should be dismissed for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6).

### D. ALL OF PLAINTIFF'S REMAINING CLAIMS FAIL TO STATE A CLAIM BECAUSE THEY ARE EITHER DUPLICATIVE OF THE DEFAMATION CLAIM OR FAIL ON THEIR OWN

#### A. Intentional Infliction of Emotional Distress

The New York Court of Appeals has held that the tort of intentional infliction of emotional distress is likely not available "where the conduct complained of falls well within the ambit of other traditional tort liability." *Fischer v. Maloney*, 43 NY2d 553, 558 (1978). See also *Rivers v. Towers, Perrin, Forster & Crosby Inc*., No. CV-07-5441 DGTRML, 2009 WL 817852, at 9 (E.D.N.Y. Mar. 27, 2009): "It also appears that plaintiff's claim arising out of the alleged defamation should be dismissed on the court's own motion because the claim falls within the ambit of the tort of defamation." Furthermore, both negligent and intentional infliction of emotional distress claims require "extreme and outrageous conduct". See *Dawkins v. Williams*, 413 F.Supp.2d 161, 178-179 (N.D.N.Y. 2006)" and *Rivers*, *supra* at 23. See also *Murphy v*

20

*American Home Prods. Corp.*, 58 NY 2d 293, 303 (1983) (*rev'd on other grounds*): "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" (*quoting Second Restatement § 46*, *Comment d.*). Lastly, IIED "is a highly disfavored cause of action under New York law, one that is almost never successful." *Coleman*, *supra* at 14 (*quoting Collins v. Giving Back Fund*, No. 18-CV-8812 (CM), 2019 WL 3564578 at 14 (S.D.N.Y. Aug. 6, 2019)). See also *Seltzer v Bayer*, 709 N.Y.S. 2d 21, 23 (1st Dep't. 2000) (holding that the defendant's alleged dumping of a pile of cement, tossing of lighted cigarettes and drawing of a swastika on a neighbor's house did not constitute sufficiently outrageous conduct to survive a motion for summary judgment).

Defendant's Statement does not come close to clearing New York's exceedingly high threshold. Pursuant to the *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 571 (2007) requirement that a plaintiff plead enough facts to make a complaint "plausible on its face", this claim fails and should be dismissed.

### B. Negligent Infliction of Emotional Distress

Plaintiff's negligent infliction of emotional distress ("NIED") claim fails for the same reason-- see *Rivers, supra at* 23-24 ("With respect to the [NEID] claims overlapping with plaintiff's defamation claim, these also fail to state a claim… there must be "breach of a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety." (*quoting Dawkins, supra* at 179)). Furthermore, absent a physical injury courts have been reluctant to allow recovery for "'emotional harm alone.'" *Blake v. Race*, 487 F.Supp.2d 187, 219 (E.D.N.Y. 2007) (*quoting Armstrong ex rel. Armstrong v. Brookdale*, 425 F.3d 126, 137 (2d Cir. 2005) (*quoting Johnson v. State*, 334 N.E.2d 590, 592

(N.Y. 1975)). Here, plaintiff has offered no evidence of physical injury or fear of personal safety, thus his NIED claim also fails.

### C. Tortious Interference with Contractual Relations

Under New York law, tortious interference with contract claims and other similar torts are found to be duplicative of defamation where the "entire injury complained of by plaintiff flows from the effect on his reputation." *Ganske v.* Mensch, 480 F. Supp. 3d 542, 556 (S.D.N.Y. 2020). "New York law considers claims sounding in tort to be defamation claims, not only where those causes of action "seek damages only for injury to reputation...but also where "the entire injury complained of by plaintiff flows from the effect on his reputation." *Jain v. Sec. Indus. & Fin. Markets Ass'n*, No. 08 CIV.6463 DAB, 2009 WL 3166684 at 9 (S.D.N.Y. Sept. 28, 2009) (internal citations omitted).

In *Ganske*, the plaintiff, a journalist, sued a former British Parliament Member turned blogger for alleging he was "xenophobic" and "spread Russian bots" on his website. In addition to defamation, the plaintiff brought a tortious interference with contract claim alleging that the defendant knew he had an employment contract with AP news and that defendant's tweets/retweets to hundreds of thousands of users proximately caused him to lose his job, suffer loss of income and business, damage to his reputation and more. *Id.* at 17. The court deemed the tortious interference and defamation claims indistinguishable and dismissed the former as duplicative, despite its "different label".

Lastly, plaintiff has not produced any evidence beyond bald assertions that he had contracts in place with several GL members and two acting studios and that the defendants knew about those contracts and intended to disrupt them. Am. Compl., par. 60 and 61. In *Ganske*, *supra*, the court found plaintiff's assertions that defendant knew or had knowledge of his

employment contract with AP news conclusory and insufficient to establish intent. "It is not

enough," therefore, "for [the] plaintiff to merely state that [the defendant] 'intentionally

procured' the breaches of contract, or that 'the comments were motivated solely to inflict harm.'"

*Id.* at 557 (*quoting Harris v. Queens Cty. Dist. Atty's Office*, No. 08-CV-1703, 2009 WL

3805457, at 11 (E.D.N.Y. Nov. 9, 2009)). Plaintiff attempts the same ploy here and his tortious

interference with contractual relations claim should be dismissed.[11]

### D.  Injurious Falsehood

In New York, "a plaintiff must allege special damages "with the requisite specificity" to

proceed on an injurious falsehood claim. See *Kasada, Inc. v. Access Capital, Inc.,* No. 01 Civ.

8893, 2004 WL 2903776, at 16 (S.D.N.Y. Dec. 14, 2004) and *Rail v. Hellman,* 726 N.Y.S.2d

629, 632 (App. Div. 2001). Alleging damage amounts in round figures does not suffice. *Vigoda*

*v. DCA Prods. Plus Inc.,* 293 A.D.2d 265, 266 (N.Y. App. Div. 2002) (holding that "damages in

round numbers . . . amount to mere general allegations"). This claim is also duplicative of the

defamation claim because it relies on the Statement as the cause of harm to his reputation. See

*O'Brien v. Alexander*, 898 F. Supp. 162, 172 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 1479 (2d Cir.

1996) ("Plaintiff's claim for injurious falsehood relies on the same statements that form the basis

---

[11] It is unclear if plaintiff meant to allege tortious interference with *business* relations.
Regardless, that claim would also fail as duplicative and for failure to state a claim because it
requires a defendant to have acted with a "wrongful purpose, or used dishonest, improper or
unfair means." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.,* 455 F.
App'x 102, 104 (2d Cir.2012). "Wrongful purpose" means a defendant's conduct must amount to
a crime or other tort, or that it was for the "sole purpose of inflicting intentional harm on the
plaintiff." *Id.* at 106. Also, the conduct had to have been aimed at a third party that had an
existing or prospective business relationship with the plaintiff. *Carvel Corp. v. Noonan*, 3,
N.Y.3d 182, 192 (N.Y. 2004). Here, defendants published the Statement to all of GL, not to Next
Level Studios LA or One on One NYC, nor specifically to the GL members plaintiff names in
his pleadings. Am. Compl., par. 26. Plus, defendants had their own independent, legitimate
reasons for posting it and did not intend to injure plaintiff with it. Rudolph Aff., pars. 15 and 17.

of the defamation claim. Additionally, plaintiff's damages for the injurious falsehood claim are exactly the same as those alleged for the defamation claim, although plaintiff takes care not to state that the damages are the result of injury to his reputation. Since plaintiff's injurious falsehood claim is duplicative of his defamation claim, it is dismissed.")

Therefore, as with plaintiff's other tort claims, the injurious falsehood claim is duplicative of the defamation claim and fails to state a cause of action and should be dismissed.

## CONCLUSION

For the foregoing reasons, this Court lacks subject matter jurisdiction over plaintiff's amended complaint because he dismissed the nearly identical claim with prejudice in California prior to filing this action. Fed. R. Civ. Pro.12(b)(1). Alternatively, all of his claims must be dismissed under Fed. R. Civ. Pro. 12(b)(6) because they fail to state a claim. Defendants also claim attorney's fees and costs under N.Y. Civ. Rights § 70(a) and § 76(a) and, alternatively, under all other defenses, plus compensatory damages and such other relief this court deems just.

Respectfully Submitted

By:  /stephenreich

Stephen Reich, Esq.
NY Bar #4706644
745 Boylston Street, 7th Floor
Boston, MA 02116
(917)-204-7024
sreichesq@stephenreichlaw.com

Dated:  July 30, 2021

24